UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MINOR DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:19-cv-3080-MTS |
| ) | |
| SAINT LOUIS PUBLIC SCHOOLS, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Before the Court is Defendants' Motion for Summary Judgment, Doc. [78], pursuant to Federal Rule of Civil Procedure 56, on the remaining claims in Plaintiff's First Amended Complaint, Doc. [72]. Three claims remain in this matter; all three are asserted against Defendant St. Louis Public School District (the "District"), and one claim is asserted against the District's superintendent Defendant Kelvin Adams ("Adams").[1] For reasons discussed below, the Court grants summary judgment as to Count II but denies summary judgment on Counts I and III.

**I.   BACKGROUND**

This case arises out of the sexual harassment and abuse of Plaintiff Minor Doe, a former student of the District, by Michael West ("West"), a former employee of the District and an in-school suspension monitor at Vashon High School ("Vashon"), where Plaintiff previously attended school.

During the 2016–2017 school year, Plaintiff was a ninth grade student at Vashon. West

---

[1] The Court notes Plaintiff inaccurately proceeds with Title IX arguments against Defendant Adams. *See* Doc. [86] (plaintiff's response brief). The Court previously granted Adams' request for Judgment on the Pleadings with respect to Title IX claims in Counts II and III. *See Doe v. Saint Louis Pub. Sch.*, 4:19-cv-3080-MTS, 2021 WL 4318167, at *6 (E.D. Mo. Sept. 23, 2021). While the Court did permit Plaintiff leave to amend, the Court specifically noted the amending was restricted to the negligence claims. *See id.* at *11.

1

worked at Vashon as an in-school suspension officer, responsible for disciplinary issues at Vashon. Beginning in the second semester of Plaintiff's freshman year, West began "pulling" Plaintiff out of class and taking Plaintiff into his office. West would knock on Plaintiff's classroom door and motion for Plaintiff to come with him. Plaintiff testified that on average he was called to West's office three times a week, sometimes as many as five times a week.[2] West pulled Plaintiff out of class at various times of the day, interrupting classes throughout the week. Plaintiff explained this negatively affected his schoolwork. No one from the District ever checked on Plaintiff to see why he was spending so much time in West's office or what was occurring while he was in West's office. Plaintiff never made any complaints to the District about West during the 2016–2017 school year.

During this time, Plaintiff maintains that West was "grooming" Plaintiff. He gave Plaintiff money and gifts at school, one time giving Plaintiff $20 for a haircut because he wanted Plaintiff's hair to look a certain way. He would also give Plaintiff "snacks and stuff" at school. Doc. [90-3] at 9 (84:3–5). West inappropriately touched Plaintiff in a sexual manner in the thigh area, as Plaintiff described "like where you will grab a girl to turn her on." *Id.* at 10–11 (86:23–87:18). Once second semester ended, Plaintiff was required to attend summer school because he was academically behind. After just two days, West kicked Plaintiff out of summer school. West contacted Plaintiff's father ("Father"), alleging that Plaintiff was misbehaving. Father initially believed West was telling the truth about his son, but now believes that West was "framing his son, setting [his] son up, grooming him, whatever he had planned for him." Doc. [90-4] at 25 (66:2–4). During the summer, West's misconduct only intensified, which included, among other acts, soliciting Plaintiff to perform sexual acts for money and asking Plaintiff to send him pictures

---

[2] Records from Vashon indicate that Plaintiff was pulled out of class only eight times during his entire freshman year. Doc. [94] ¶ 7. It was up to West to accurately report the number of times Plaintiff was removed from class. *Id.*

of his genitals.

    About a week before Plaintiff would have begun his sophomore year at Vashon, Father became aware that West was soliciting his son for sexual acts.  He heard recordings of calls and saw text messages and images between West and Plaintiff.  Plaintiff's family went to the District on August 15, 2017.  Immediately after learning of the allegations, the District placed West on administrative leave pending an investigation and prohibited him from entering District property.  Prior to Plaintiff's allegations about West, the District never received a complaint about West sexually harassing or sexually assaulting a student.  Following an investigation, the District terminated West.  Stemming from his misconduct with Plaintiff, West is currently serving five years in prison for Enticement of a Child and four years in prison for Possession of Child Pornography to be served concurrently.  Doc. [90-18].

    Defendant Adams was the District superintendent while Plaintiff was a student in the District.  As superintendent, Adams is made aware of allegations of sexual abuse between a teacher and student, but the human resources department handles the complaints.  Brenda Smith was the ninth grade principal at Vashon when these acts occurred.  No one ever spoke to Principal Smith about Plaintiff returning to Vashon, she was never asked to participate in any investigation, and no one from the administration spoke with her about the abuse.  Principal Smith never spoke to any teachers or students about the allegations, and she was never contacted by anyone in the administration.  The first time the District informed Principal Smith of West was for *this* lawsuit.  Doc. [90-7] at 8 (21: 3–15).  Network Superintendent Dr. Crystal Gale indicated that the District kept it "very quiet."[3]  Doc. [90-9] at 7–8 (9:19–10:12).

    After Plaintiff and Father had reported West to the District, the District placed Plaintiff in

---

[3] Network Superintendent Gale was not informed of any other allegations of teacher-student sexual misconduct at the District or Vashon.  Doc. [90-9] at 8 (10:13–23).

a virtual learning setting for his sophomore year where he was not present at school and not with other students. There is a dispute regarding whether the District prohibited Plaintiff from returning to Vashon or another in-person school within the District. *See, e.g.*, Doc. [88-1] ¶¶ 20, 22, 24. During his sophomore year of virtual learning, Plaintiff was never offered any counselling, therapy, or assistance.[4] Doc. [90-11] at 12 (110:17–20). Plaintiff also stated that no one ever contacted him to see how he was doing or to offer support. During virtual learning, Plaintiff completed less than one-half the required credits for his sophomore year. There is no record indicating that either Plaintiff or Father received any follow-up to figure out why Plaintiff only passed less than one half the required credits. Despite being absent for 150 days in his sophomore year, the District reported to the Missouri Department of Elementary and Secondary Education that Plaintiff attended school all but 7 days. The District also reported Plaintiff attended 1,090.05 hours, but records from the virtual learning program show he attended only 370 hours. According to the Dropout Recruiter/Virtual Supervisor, Charlie Bean, Plaintiff or Father should have received a phone call *daily* from the virtual learning supervisor to see why he was not participating. Plaintiff and Father received none. According to Bean, that was an "oversight" in the program.

Plaintiff sought to return to in-person learning for his junior year. The District enrolled him at Roosevelt High School in August 2018. No one at Roosevelt, including Principal Enna Dancy, was informed about Plaintiff's abuse by West prior to his enrollment there. Almost immediately, Plaintiff was involved in a conflict with Joseph Canamore ("Canamore"), who held a position at Roosevelt like that which West had held at Vashon. While in the hallway, Cannamore asked Plaintiff his name, but Plaintiff refused to provide it. Principal Dancy was also in the

---

[4] Nor is there a protocol for helping students who are victims of sexual harassment or abuse by a teacher. Doc. [90-11] at 11 (100:18–22).

4

hallway and came over to intervene.[5] Plaintiff stated Canamore inappropriately interacted with him, suggesting that Canamore might also be a pedophile like West. Principal Dancy requested statements about the incident from both Cannamore and Plaintiff. Cannamore provided a statement, but Plaintiff did not because "of how badly the process had turned out following the Michael West sexual abuse." Doc. [90-14] ¶ 8. No District employee can recall any further investigation into Canamore.

After a few more interactions between the two, Cannamore told Principal Dancy and the District that he wanted Plaintiff removed from Roosevelt, and that it was either Plaintiff or Canamore—he was not going to stay at Roosevelt if Plaintiff remained. Canamore told Principal Dancy, "either [Plaintiff] leaves or I leave." Doc. [90-12] at 17 (40:16–24). Principal Dancy said, "[s]he would take care of it" and that Canamore "d[id not] know exactly what happened, but [Plaintiff] was no longer there." *Id.* Principal Dancy asked Network Superintendent Gale to approve a transfer of Plaintiff from Roosevelt to Gateway STEM. Plaintiff attended Roosevelt just for 16 days. Again, there is a dispute regarding whether the District prohibited Plaintiff from remaining at Roosevelt. *See, e.g.*, Doc. [88-1] ¶¶ 78–79, 81.

Principal Dancy recommended virtual classes again, but that was rejected by Plaintiff and Father. The District transferred Plaintiff to Gateway STEM in October 2018. Upon transfer, Plaintiff experienced bullying and/or harassment by other students regarding West. Plaintiff never informed the District he was being bullied or harassed. Plaintiff eventually withdrew from the District altogether and attended high school at a different school district.

Plaintiff filed a seven-count Complaint against the District and Adams. Doc. [72]. The only remaining claims in this case are: (1) a Fourteenth Amendment Due Process claim via 42

---

[5] There is a dispute regarding how many times Plaintiff and Canamore interacted prior to the incident in which Dancy was involved. *See, e.g.*, Doc. [88-1] ¶¶ 56, 60; Doc. [94] ¶ 57.

U.S.C. § 1983 against the District and Adams (Count I); (2) a Title IX claim, 20 U.S.C. § 1681, against the District (Count II); and (3) a Title IX Retaliation claim against the District (Count III). In the current Motion, Defendants move for summary judgment on all three-counts.  Doc. [78].

## II. LEGAL STANDARD

"A court must grant a motion for summary judgment if the moving party shows that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing Fed. R. Civ. P. 56(a)).  A dispute is not "genuine" unless the evidence is such that a reasonable fact-finder could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant bears the initial burden of explaining the basis for its motion, and it must identify those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).  "The moving party can satisfy its burden in either of two ways: it can produce evidence negating an essential element of the nonmoving party's case, or it can show that the nonmoving party does not have enough evidence of an essential element of its claim to carry its ultimate burden of persuasion at trial."  *Bedford*, 880 F.3d at 996.  If the nonmoving party fails to make a sufficient showing on an essential element of his or her case with respect to which he or she has the burden of proof, the moving party is "entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The court views any factual disputes in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. DISCUSSION

### A. Count I: Fourteenth Amendment Due Process violations via 42 U.S.C. § 1983

Plaintiff sued the District and Adams via 42 U.S.C. § 1983 for violations of the Fourteenth

6

Amendment for failing to adequately supervise and train Vashon employees to prevent sexual harassment and abuse. Because § 1983 does not hold local governments—here, the District—vicariously liable for the unconstitutional acts of their employees, such as West, *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978), the District will only be liable here for its *own* acts. *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Similarly, a supervising official—here, Adams—is not vicariously liable for an offending subordinate's unconstitutional acts; Adams will be entitled to qualified immunity unless his actions or inactions violated the constitution. *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). The District contends it is entitled to summary judgment because there was no constitutional violation and that it had no notice nor acted with deliberate indifference. For similar reasons, Adams argues he is entitled to qualified immunity.

### 1. Constitutional Violation

The Court begins with the threshold question of whether the record shows Plaintiff suffered a constitutional violation. Defendants argue it does not. To survive summary judgment on a § 1983 claim, a plaintiff must point to evidence that the alleged wrongful conduct deprived him of a right, privilege, or immunity secured by the Constitution or federal law. *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009). Plaintiff sued under § 1983 for violations of his right to due process.[6] Doc. [72] at 7–8. The right to be free from the deprivation of liberty without due process of law is a right guaranteed by the Fourteenth Amendment. U.S. CONST. amend.

---

[6] Although sexual harassment can violate the Fourteenth Amendment for § 1983 purposes, *Moring v. Arkansas Department of Correction*, 243 F.3d 452, 455 (8th Cir. 2001), the basis for that violation comes from the Equal Protection Clause of the Fourteenth Amendment. *Cox v. Sugg*, 484 F.3d 1062, 1066 (8th Cir. 2007) (explaining a Fourteenth Amendment sexual harassment claim via section 1983 identifies the "Equal Protection Clause as the relevant constitutional provision"). Plaintiff, however, only pleaded a violation of the Due Process Clause, such as the right to be free from violations of bodily integrity and sexual abuse. Doc. [72] ¶¶ 36–38. The Court cannot hold that sexual harassment *alone* is enough for a Fourteenth Amendment violation of bodily integrity. Although the record is undisputed that West sexually harassed Plaintiff, the Court must tether its analysis to the Complaint. As such, the Court's analysis on this point focuses on whether the evidence before the Court shows a Fourteenth Amendment violation to Plaintiff's liberty interest in bodily integrity under the Due Process Clause.

XIV, § 1.  An important manifestation of "liberty" is "heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).  The Supreme Court has recognized a "liberty interest" in "bodily integrity," *id.*, meaning the Due Process Clause protects individuals from some government intrusions into their body.  *United States v. Morris*, 494 F. App'x 574, 580 (6th Cir. 2012) (explaining a Fourteenth Amendment due process right as "protection against unreasonable bodily intrusions by state-actors"); *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 795 (8th Cir. 1998) (recognizing a "substantive due process right to bodily integrity"); *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1160–61 (9th Cir. 2020) (discussing Fourteenth Amendment's clearly established due process right to "bodily privacy").

Defendants argue there is no constitutional violation because "the only physical contact that occurred" at school was when West touched Plaintiff "on the leg" on one occasion.  Doc. [78] at 9.  While it is undisputed that West physically touched Plaintiff once at school, the nature and extent of the touching is disputed, including the characterization of the touch; Defendants argue that the touching was not sexual, but Plaintiff describes the touching as sexual and, in an area, where, viewing the facts in the light most favorable to Plaintiff, may be enough for a constitutional violation.  *P.H. v. Sch. Dist. of Kansas City, Mo.*, 265 F.3d 653, 658 (8th Cir. 2001) ("It is well-settled that the Due Process Clause of the Fourteenth Amendment protects the liberty interest of a child in public school from sexual abuse."); *Doe v. Gooden*, 214 F.3d 952, 956 (8th Cir. 2000) (physical abuse may rise to the level of a constitutional violation if the court finds that the physical abuse is literally shocking to the conscience).

Regardless, the Court is not limited to just that one physical touching, as Defendants so suggest.  The Court rejects Defendants attempt to shoehorn this case into the lens of sexual physical

8

touching (i.e.: sexual abuse) because there are undisputed acts that overtly violated Plaintiff's body, which, on this record, may be enough for a Fourteenth Amendment violation of Plaintiff's bodily integrity, privacy, and security.  Defendants brushed over, and actually completely ignored, these several other undisputed acts, which the Court finds both unpersuasive and contrary to Fourteenth Amendment principles.  Without any legal authority to the contrary, the Court does not accept that a teacher's grooming, touching, and sexual solicitation and exploitation of his ninth grade student could not be a Fourteenth Amendment violation of bodily integrity, all of which shocks the conscious of the Court.[7]  *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) ("[T]he Due Process Clause was intended to prevent government officials from abusing their power[,]" and "the cognizable level of executive abuse of power [i]s that which shocks the conscience." (cleaned up)); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998) (acknowledging the "extraordinary harm" a student suffers when subjected to sexual harassment and abuse by a teacher, conduct which is "reprehensible and undermines the basic purposes of the educational system").

### 2.  Municipal Liability for Failure to Supervise and Train

To hold the District liable under § 1983, Plaintiff must prove that the District failed to supervise or train, which amounted to "deliberate indifference" to the rights of its students, such

---

[7] While Defendants attempt to argue that none of these acts (except the one-time touching at school) did not occur when West was under the Districts "control," Defendants provide no legal authority to define "control" in this context nor provide factually analogous/distinguishable cases to show that West was not under the Districts "control" during these acts.  Moreover, on this record, the Court cannot discern *when* the several other acts that led to a violation of Plaintiff's body occurred.  This is important because the Court rejects Defendants' argument that it had control over West *only* during the 2016–2017 school year; West was in a position of authority during summer school at the District, notably where Plaintiff attended.  Thus, without any legal support or facts to the contrary, the Court cannot find as a matter of law that the acts the Court finds led to a violation of Plaintiff's body did not occur while West was under the District's "control."

as Plaintiff.[8]  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).  Deliberate indifference is a stringent standard of fault that cannot be predicated upon mere negligence.  *Doe v. Flaherty*, 623 F.3d 577, 584 (8th Cir. 2010).

Defendants focus their briefing on whether the District had actual knowledge (i.e.: notice) that West was a sexual predator prior to Plaintiff's August 2017 allegations and whether the District acted deliberately indifferent upon Plaintiff's reporting of West.  Doc. [79] at 10–15; Doc. [93] at 3–7.  To the extent such a proposition is advanced by Plaintiff, the Court notes it is unsupported by the record and fails as a matter of law, as discussed in more detail below in Count II.  The Court agrees with Defendants that the District would be entitled to summary judgment on this claim because the District had no notice of West's conduct prior to Plaintiff's August 2017 allegations[9] and that when the District did learn of West, it did not act with deliberate indifference.

Pertinent to the Court's analysis here, Plaintiff puts forth a theory that the District had actual knowledge of a pattern of violations (teacher-student sexual misconduct) and that the District's deliberate indifference to those acts were likely to cause the constitutional violation in this case.  In other words, the deliberate indifference here is premised on the District's conduct *before* Plaintiff reported West, while the District's reaction *after* Plaintiff reported West, as mainly argued in Defendants' briefing, is irrelevant to this point.  Under this theory, to show deliberate indifference, Plaintiff must prove the District had "notice" that its procedures were inadequate and likely to cause a constitutional violation—here, West's conduct.  *Doe v. Fort Zumwalt R-II Sch.*

---

[8] Under § 1983, "a claim for failure to supervise requires the same analysis as a claim for failure to train." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1216 (8th Cir. 2013).

[9] The Court notes that any attempt by Plaintiff to hold the District liable because it should have known about West fails as a matter of law.  *P.H. v. Sch. Dist. of Kansas City, Mo.*, 265 F.3d 653, 663 (8th Cir. 2001) (evidence that the school district "should have known" of alleged sexual misconduct was insufficient). The undisputed facts show the District did *not* have knowledge of West's misconduct prior to Plaintiff's reporting on August 15, 2017.  *Cf. id.* at 662–63 (evidence of "excessive time" together or favoritism does not meet the actual notice standard).

10

*Dist.*, 920 F.3d 1184, 1189 (8th Cir. 2019).  The requisite "notice" can be shown if a "pattern of violations put the policymaking body on notice that the school's response to regularly occurring situations was insufficient to prevent unconstitutional conduct." *Plamp v. Mitchell Sch. Dist. No. 17-2*, 565 F.3d 450, 462 (8th Cir. 2009).

Here, it is undisputed there were several incidents of teacher-student sexual assault and harassment at Vashon in the three years prior to Plaintiff's reporting of West.  It is undisputed that the District had notice of these allegations.[10]  It is undisputed that after several allegations of teacher-student sexual misconduct at Vashon which pre-dated the allegations of this case, the District took *no* action to implement changes to its policies or procedures to prevent future occurrences of teacher-student sexual misconduct nor open any investigation to see if there was a problem of sexual assault/harassment generally at Vashon.  Doc. [94] ¶ 21; Doc. [90-10] at 14–15 (19:23–20:4).  The Districts' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by" Vashon employees "may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Connick*, 563 U.S. at 62.  Perhaps, the Court's ruling in this matter would be different if the District had implemented a new supervision or training procedure/policy based on these seemingly "regularly occurring situations," but it indisputably did nothing.

While the Court is aware that it must consider the "similarities" between the constitutional violations when analyzing notice in this context, *Connick*, 563 U.S. at 62 (explaining a "pattern of similar constitutional violations" is "ordinarily necessary" to demonstrate deliberate indifference), Defendants provide no legal argument or analysis on this basis.  Defendants did not even

---

[10] The Court acknowledges that in this context, the District employees with notice must be the requisite policy-making officials; however, Defendants do not present any policy-making authority arguments in their Briefing.  *Cf. Plamp*, 565 F.3d at 459–60.

distinguish the particulars of the other student-teacher incidents as differentiated from the one at hand.  From a legal standpoint, unlike other constitutional settings where the particular details of the constitutional violations are more pertinent to the analysis (e.g.: excessive force claim), the nature and context of *this* type of case is also worth noting.  Unlike an excessive force claim, where there is inherently some necessary physical contact between a police officer and a suspect, there is absolutely *no* degree of sexual behavior inherent in a teacher-student relationship.  Nonetheless, this type of behavior appeared frequent at one District school—Vashon.[11]

On this record, the Court cannot find that the undisputed similarities between the past teacher-student incidents and West did not impute the requisite notice on the District.  It is undisputed that the other incidents involved Vashon staff with students,[12] the conduct was sexual in nature, all incidents were reported, all occurred at Vashon (not just at schools within the District) and were all within a short time span of one another.  Without any legal and factual arguments to the contrary, the Court finds that several teacher-student incidents of sexual misconduct in just three years at Vashon may be a pattern, one of which a jury could find imputed notice on the District to the inadequacies of its policies.  *See Thelma D. v. Bd. of Educ., City of St. Louis*, 934 F.2d 929, 933 (8th Cir. 1991) (finding five complaints over sixteen years insufficient widespread pattern of unconstitutional conduct); *Plamp*, 565 F.3d at 460 ("[T]hree concrete complaints . . . scattered over approximately twelve years and contain[ing] little in terms of content" did not amount to a pattern); *P.H.*, 265 F.3d at 659 (considering time span and detail of the complaints when analyzing notice).

---

[11] Defendant Adams himself stated that these many incidents of teacher-student sexual misconduct are not "typical." Doc. [90-10] at 14.

[12] The Court notes that Defendants did not argue that these other incidents were not constitutional violations.

Finally, it is not enough for Defendants to merely state that their policies and procedures for preventing or responding to sexual harassment and abuse between teachers-students are adequate. Defendants must actually identify "those portions of the record that demonstrate" undisputedly its procedures were adequate. *Torgerson*, 643 F.3d at 1042. Defendants have not done so here. And, to the contrary, the record shows the District's policies and procedures may have been inadequate.[13]

Based on the record before the Court, a jury could reasonably find that there was a pattern of teacher-student sexual assault and harassment at Vashon, that the District was on notice that its response to the recurring sexual misconduct by teachers (i.e.: supervision and training) was insufficient, and that the District's failures were insufficient to prevent the exact harm here at issue. As such, summary judgment in favor of the District on Count I is denied.

### 3. Qualified Immunity for Failure to Supervise and Train

Supervisory school officials, like Defendant Adams, may be liable under § 1983 only if they are "deliberately indifferent to acts committed by a teacher that violate a student's constitutional rights." *Gooden*, 214 F.3d at 955. Plaintiff must show that Adams received notice of a pattern of unconstitutional acts, demonstrated deliberate indifference to the acts, failed to take sufficient remedial action, and that such failure proximately caused injury to the student. *S.M.*, 808 F.3d at 340. Similar to the District, the Court agrees with Defendants that Adams would be entitled to qualified immunity on the basis that he had no notice of West's conduct prior to Plaintiff's August 2017 allegations and that when Adams did learn of West he did not act with

---

[13] Defendant Adams acknowledged that the District's training—which did not inform administrators/teachers of prior teacher-student sexual misconduct or how such conduct previously occurred at their school—does *not* prevent further sexual harassment. Doc. [90-10] at 19 (26:11–24). Another example is regarding three of the teacher-student incidents of sexual misconduct at Vashon where the investigation simply stopped because the offender resigned. *Cf. Thelma D*, 934 F.2d at 935 (finding evidence that child abuse procedures had been effective in an earlier incident involving a different teacher weigh against notice).

deliberate indifference. However, the Court holds that Adams is not entitled to qualified immunity for the same reasons as the District, as discussed directly above.[14] *Ottman v. City of Indep., Mo.*, 341 F.3d 751, 761 (8th Cir. 2003) (explaining a supervisor incurs liability if his "corrective inaction constitutes deliberate indifference toward the [pattern of] violation[s]").

### B. Count II: Violation of Title IX

Plaintiff argues that the District is liable under Title IX for its actions upon Plaintiff's reporting of West. A Title IX claim requires a Plaintiff to show the District was "deliberately indifferent" to known acts of discrimination. *Pearson v. Logan Univ.*, 937 F.3d 1119, 1125 (8th Cir. 2019) (per curiam). A school is deliberately indifferent when its "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648 (1999). Defendants argue that the undisputed facts show the District did not act with deliberate indifference. The Court agrees.

The undisputed facts demonstrate that as soon as the District had actual knowledge of West's conduct, the District immediately removed West from Vashon, suspended him from the District, contacted the police, conducted its own internal investigation into the allegations, issued West a Statement of Charges, and ultimately terminated his employment. From the time the District learned of the allegations to the time of West's termination, West was not allowed to enter and did not enter upon District property. In cases like this, the Court of Appeals for the Eighth Circuit typically finds in favor of schools who take immediate action against the teacher upon learning of the misconduct. *See Plamp*, 565 F.3d at 457 (finding adequate response when superintendent took "immediate action" by suspending teacher and prohibiting him from school

---

[14] The Court notes Defendants did not present any arguments that Adams did *not* have policy-making authority or was not a supervisor. There is also a genuine dispute of fact relating to whether Adams had notice of the other teacher-student incidents of sexual misconduct at Vashon.

14

property without school escort); *Flaherty*, 623 F.3d at 583 (suspending teacher after directly learning of misconduct); *P.H.*, 265 F.3d at 659[15] (emphasizing school's "immediate action" to remove teacher from classroom).  Similar to the progeny of Eighth Circuit cases, the District here took immediate action once it had actual knowledge of West's conduct.  As a matter of law, the Court cannot attribute to the District deliberate indifference in its response to the harassment.

Plaintiff argues that the District acted with deliberate indifference based on its overall response to Plaintiff after he reported West, not just the District's response to West, the harasser.  But Plaintiff points to no case law that supports its proposition that in some circumstances, prompt disciplinary action against a student's identifiable harasser is not enough to show that a school district was not deliberately indifferent.  While the record shows the District's overall response (e.g.: virtual learning) may have been unsatisfactory, the law does not support Plaintiff expanding Title IX liability so broad as to include actions beyond deliberate indifference *to the harassment*. *Gebser*, 524 U.S. at 290 (explaining a response amounts to deliberate indifference when there is an "official decision by the recipient not to remedy the violation"); *Roe v. St. Louis Univ.*, 746 F.3d 874, 882 (8th Cir. 2014) (explaining that to avoid deliberate indifference liability an institution "must merely respond to known [] harassment in a manner that is not clearly unreasonable").

Title IX liability stems from deliberate indifference *to the harassment*.  As explained, the District did not act with deliberate indifference—to the harassment—because it investigated Plaintiff's allegations and immediately put an end to the harassment.  The Court grants summary judgment in favor of the District on Count II.

---

[15] While *P.H.* analyzed deliberate indifference in regard to a § 1983 claim, the deliberate indifference standard under Title IX and § 1983 are comparable.  *Roe v. St. Louis Univ.*, 746 F.3d 874, 882 (8th Cir. 2014).

### C. Count III: Title IX Retaliation

To establish a case of retaliation under Title IX, a plaintiff must demonstrate that (1) he engaged in protected conduct; (2) he suffered a materially adverse act; and (3) the adverse act was causally linked to the conduct. *Du Bois v. Bd. of Regents of Univ. of Minn.*, 987 F.3d 1199, 1203 (8th Cir. 2021). Defendants argue that the undisputed facts preclude Plaintiff from showing materially adverse action or a causal connection and that Plaintiff has "no evidence" to the contrary.

In support of their motion for summary judgment on Count III, Defendants point to clearly disputed facts. *See, e.g.*, Doc. [79] at 23; Doc. [93] at 13. Despite Defendants assertion to the contrary, there *is* a dispute as to whether, for example, the District "pushed" Plaintiff out of Vashon and into virtual learning. *Liberty Lobby*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Moreover, based on the record before the Court, there is certainly not "no evidence," as Defendants so suggest, that the District created a hostile education environment for Plaintiff after reporting West. The Court also notes evidence of an incident between Plaintiff and a *different* teacher (Canamore) which may have led to *additional* retaliatory conduct by the District. Doc. [88-1] ¶¶ 54, 50, 59. Defendants' ask this Court to do what it cannot do on a motion for summary judgment—find that Defendants' recitation of the facts is true, and Plaintiff's is false. *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (prohibiting a court from weighing evidence or making credibility determinations on summary judgment). The Court finds Defendants, the moving party, failed to meet their burden as to Count III. *See* Fed. R. Civ. P. 56(c)(1); *Celotex Corp.*, 477 U.S. at 325 (explaining the moving party discharges their burden on summary judgment

16

by "pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case").

## CONCLUSION

The Court grants summary judgment in favor of Defendants on Count II because the undisputed facts show the District did not act deliberately indifferent to West's harassment of Plaintiff. The Court denies summary judgment on Counts I and III because disputes of material fact remain.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, Doc. [78], is **GRANTED** in part, and **DENIED** in part.

Dated this 15th day of June, 2022.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE